UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| TINA GREEN, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | Civil Action No. 09-20-ART |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| FLOYD COUNTY, KENTUCKY, et al., | ) | **& ORDER** |
| | ) | |
| Defendants. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

The defendant prison guards allegedly stood by for days while inmates beat Terry Fisher into a near-vegetative state. His complaint alleges that, since the attack, he has been incapable of managing his own affairs. If proven, this disability will toll the statute of limitations. The defendant's motion for judgment on the pleadings, which argues that this action is time barred, is thus denied.

### BACKGROUND

Mr. Fisher walked into prison having pled guilty to abusing a minor. R. 79 at 4-5. From there, the allegation is this: Prison employees improperly classified him, sticking him in a communal cell, and told his cellmates why he was there. For days, three of the defendant prison guards—Rankin, Howell, and Derosset—turned a blind eye as Mr. Fisher's cellmates brutally tortured him. *Id.* at 5; R. 91 at 7. Mr. Howell, for instance, saw the cellmates lead Mr. Fisher around by a leash and merely asked them to remove it. R. 79 at 5. He later egged the prisoners on, asking them "where's your dog tonight?" R. 91 at 7.

After prolonged beating, Mr. Fisher's cellmates finally alerted the guards when it

appeared he might be dying. R. 79 at 5. He suffered a number of broken bones and was in a near-vegetative state. *Id.* As a result of his injuries, Mr. Fisher is incapable of making decisions for himself. *Id.* at 6.

Tina Green, Mr. Fisher's guardian, filed an initial complaint in February 2009, just months after the August 2008 incident. R. 1 at 5. She sued Floyd County, the Jailer Roger Webb, and several John Does. *Id.* at 1. The case stalled, however, because a parallel criminal matter required this Court to stay discovery. Discovery resumed in August 2010. R. 54. The plaintiff then uncovered investigation notes that exposed Mr. Rankin, Mr. Howell, and Mr. Derosset as the guards on duty, some of whom played an active role. R. 91 at 7: Not only did the notes reveal Mr. Howell's asking the other prisoners about their "dog," but they also indicate Mr. Rankin was the one who disclosed Mr. Fisher's offense. *Id.*

The plaintiff filed an amended complaint on January 8, 2011, naming the three prison guards and another employee (who improperly classified Mr. Fisher) for the first time. R. 77. The new defendants now move for judgment on the pleadings on the theory that the one-year statute of limitations bars the plaintiff's § 1983, negligence, and assault-and-battery claims. They also argue that the plaintiff cannot assert a tort-of-outrage claim where other, more traditional torts are available to redress the same misconduct. R. 85.

## DISCUSSION

The defendants are wrong. First, at this early stage—where the plaintiff's allegations must still be taken as true, *Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 549 (6th Cir. 2008)—it appears the statute of limitations has been tolled as to the § 1983 claims. Kentucky

2

Revised Statute § 413.170(1) specifically tolls the statute of limitations while a would-be plaintiff is "of unsound mind"—that is, while he is incapable of handling his own affairs, even if not technically insane. *Se. Ky. Baptist Hosp., Inc. v. Gaylor*, 756 S.W.2d 467, 469 (Ky. 1988) (litigant is of "unsound mind" if incapable of handling his own affairs); *Carter v. Huffman*, 262 S.W.2d 690, 692 (Ky. 1953) (holding that § 413.170's "unsound mind" provision does not "depend upon a legal adjudication following a sanity inquest"). Here, the complaint clearly alleges that Mr. Fisher has been of unsound mind since the purported attack at the jail. *See* R. 1 at 5 ("As a consequence of his head injuries, Mr. Fisher is unable to make decisions for himself . . . ."). His guardian's deposition testimony corroborates this—indicating he needs help bathing and dressing and has problems remembering the incident. R. 91 at 2-3.

Instead, the defendants incorrectly argue that KRS § 413.170(1) only applies where the plaintiff was of unsound mind before the incident supporting the litigation. As the defendants acknowledge, the Sixth Circuit rejected precisely this position in a published decision. *Powell v. Jacor Commc'ns Corporate*, 320 F.3d 599, 603-04 (6th Cir. 2003). The Court is bound by this interpretation of Kentucky law unless the defendants can point to a clearly contrary, intervening Kentucky Supreme Court decision. *See Rutherford v. Columbia Gas*, 575 F.3d 616, 620 (6th Cir. 2009) (Clay, J., concurring in part and dissenting in part). They have not done so. The defendants nevertheless insist that the rule is absurd insofar as it tolls the statute of limitations for defendants with severe mental injuries but not physical injuries. But even if the holding is "absurd," the Court cannot ignore it.

Nor is it true, as the defendants claim, that § 413.170(1) is inapplicable because Mr.

Fisher is represented by a guardian. While a Kentucky intermediate appellate court adopted the defendants' view with no citations, *see Tallman v. Elizabethtown*, No. 2006-CA-002542, 2007 WL 3227599, at *3 (Ky. Ct. App. Nov. 2, 2007), and while the defendant's position may have some common-sense appeal, Kentucky's highest court disagrees. It held that appointment of a representative for minor defendants, who are treated similarly to plaintiffs of unsound mind for tolling purposes, *see* § 413.170(1), does not change the usual tolling rule. *Newby's Adm'r v. Warren's Adm'r*, 126 S.W.2d 436, 438 (Ky. 1939). And it has also tolled the statute of limitations for a plaintiff who was "incompetent to manage his own estate" with no hint that his representation by a "committee" had any bearing on that decision. *First State Bank of Pineville v. Catron*, 105 S.W.2d 162, 165-66 (Ky. 1937); *see also Bradford v. Bracken*, --- F. Supp. 2d ---, No. 09-115, 2011 WL 127131, at *9-10 (E.D. Ky. Jan. 14, 2011); *T.S. v. Doe*, No. 5:10-217, 2010 WL 3941868, at *4 (E.D. Ky. Oct. 6, 2010). Thus, Ms. Green's guardianship has not stopped tolling of the statute of limitations.

Finally, the plaintiff can maintain the tort-of-outrage claim for now.[1] True, Kentucky's intermediate appellate courts and the Sixth Circuit have construed the tort of outrage to be a "gap-filler," available only where a more traditional tort cannot provide redress for the alleged conduct. *Lee v. Hefner*, 136 F. App'x 807, 814 (6th Cir. 2005) (citing *Rigazio v. Archdiocese of Louisville*, 853 S.W.2d 295, 299 (Ky. Ct. App. 1993)); *Bennett*, 320 S.W.3d at 137. But with an important exception. The tort of outrage is still a permissible cause of action, despite the

---

[1] The tort-of-outrage and intentional-infliction-of-emotional-distress claims are the same. *See Bennett v. Malcomb*, 320 S.W.3d 136, 137 (Ky. App. 2010).

4

availability of more traditional torts, as long as the defendants solely intended to cause extreme emotional distress. *Brewer v. Hillard*, 15 S.W.3d 1, 7-8 (Ky. Ct. App. 1999). So, for example, sexual harassment—physical contact and vocal abuse—might be redressable as battery and assault, but the plaintiff could still assert the tort of outrage if the same conduct was solely intended to cause emotional distress. *Id*; *see also Abney v. Gulley Remodeling & Maint., Inc.*, No. 2009-CA-001490, 2010 WL 2867933, at *4-5 (Ky. Ct. App. July 23, 2010). Whether the defendants here really intended to cause extreme emotional distress or simply physical pain is a close question. But at this early stage, the plaintiff's assertions must be assumed true. And the plaintiff has alleged sufficient facts from which a reasonable jury could conclude that the true, ultimate purpose of the defendants' conduct was emotional injury—in the same way that the sexual harasser's ultimate purpose might be humiliating the victim rather than mere sexual gratification. *See Brewer*, 15 S.W.3d at 8 (holding that plaintiff could maintain tort-of-outrage claim because the jury could have believed that the defendant's purpose was to cause emotional distress); *Abney*, 2010 WL 2867933 at *4-5. That is, the plaintiff alleges that the defendants stood by while inmates led Mr. Fisher around by a leash and forced him to act like a dog—a presumably painless, but undoubtedly humiliating, experience. R. 91 at 7. In fact, the Court cannot rule out the possibility that some of the guards stood by, aware *only* of this humiliating, but painless, conduct. If so, there is no question those particular guards acted only with an intent to cause emotional distress. For now, the tort of outrage claim survives.

5

## CONCLUSION

Accordingly, the defendants' motion for judgment on the pleadings, R. 85, is **DENIED**.

This the 17th day of March, 2011.

Signed By:
*Amul R. Thapar* AT
United States District Judge